UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.:

ALVIA JOHNSON,

      Plaintiff,

v.

CELEBRITY CRUISES, INC.

      Defendant.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, ALVIA JOHNSON ("Plaintiff"), by and through undersigned counsel, hereby

sues the Defendant, CELEBRITY CRUIES, INC. ("Defendant" or "Celebrity"), and alleges:

## THE PARTIES AND JURISDICTION

1.      The Plaintiff, ALVIA JOHNSON, is *sui juris* and a resident in Channelview, TX.

2.      Defendant, CELEBRITY CRUISES, INC., is a foreign entity incorporated outside

of the State of Florida, but does business in the State of Florida, and at all times material hereto

was and is doing business in Miami Dade County, Florida.

3.      The matter in controversy exceeds, exclusive of interest and costs, the sum

specified by 28 U.S.C. § 1332. In the alternative, if diversity jurisdiction does not apply, then this

matter falls under the admiralty and maritime jurisdiction of this Court.

4.      At all times material hereto, Defendant, personally or through an agent:

    a.  Operated, conducted, engaged in or carried on a business venture in this state and/or county or had an office or agency in this state and/or county;

    b.  Was engaged in substantial activity within this state;

     c.   Operated vessels in the waters of this state;

     d.   Committed one or more of the acts stated in Florida Statutes §§ 48.081, 48.181 or 48.193;

     e.   The acts of Defendant set out in this Complaint occurred in whole or in part in this county and/or state; and/or

     f.   Defendant was engaged in the business of providing to the public and to Plaintiff in particular, for compensation, vacation cruises aboard the cruise ships.

5.     The Defendant is subject to the jurisdiction of the courts of this state;

6.     This action also arises under and is by virtue of the admiralty or maritime jurisdiction pursuant to 28 U.S.C. § 1333 and is being filed in Federal Court in Miami Dade County, Florida, as required by the forum selection clause in the Passenger Contract Ticket issued by the Defendant and the causes of action asserted in this Complaint arise under the General Maritime Law of the United States.

7.     Defendant CELEBRITY, as a common carrier, was engaged in the business of providing to the public and to the Plaintiff in particular, for compensation, vacation cruises aboard the vessel, *Celebrity Equinox*.

## FACTS COMMON TO ALL COUNTS

8.     At all times material hereto, CELEBRITY, was the owner, operator, manager and/or controlled the *Celebrity Equinox*, a passenger cruise ship.

9.     On October 5, 2022, Plaintiff, ALVIA JOHNSON, was a ticketed passenger lawfully aboard Defendant's vessel, the *Celebrity Equinox.*

10.     The Defendant, *Celebrity*, as operator of the *Celebrity Equinox* owed a duty to its passenger, ALVIA JOHNSON, to exercise reasonable care under the circumstances.

11.     During the evening hours of October 4, 2022, the Plaintiff completed a request for

breakfast to be delivered to her stateroom the following morning.

12.     On October 5, 2022, at approximately 9:45 AM, the requested room service was delivered to Plaintiff's assigned cabin by the Defendant's employee who placed the room service tray on a small rectangular table located in front of the sofa located within the Plaintiff's assigned stateroom.

13.     Upon information and belief, the Defendant's employee serving the room service (or another of Defendant's personnel) had loaded the tray in a precarious manner, by placing a tall carafe of coffee at the very edge of the room service tray.

14.     The way the room server placed the tray on the table was such that the edge of the serving tray extended off the table in the direction of the sofa where the Plaintiff was ultimately seated and left the Plaintiff's stateroom.

15.     Unknown to the Plaintiff, during the early morning hours, the sea state had increased while she was sleeping.

16.     Unknown to the Plaintiff, the coffee in the tall carafe was excessively hot.

17.     The room server personnel did not warn the Plaintiff that the coffee was scorching hot nor that the sea state had increased during the early morning hours.

18.     Shortly after the room service personnel left the stateroom and before Plaintiff even poured the coffee, the tall carafe of scorching hot coffee tilted onto the sofa near where Plaintiff was seated.

19.     The Plaintiff's buttocks were severely burned by the excessively hot coffee as she sat on the sofa.

20.     The coffee carafe did not contain a secure drip-free lid and had been placed so close to the edge of the table in front of the sofa, such that the slightest movement of the ship

caused the pot to tilt toward the sofa.

21.     Defendant's employee failed to properly secure the coffee pot such that it would

not spill hot coffee.

22.     As Plaintiff was seated on the sofa, the coffee pot fell on the sofa causing scalding

hot coffee to be spilled onto the sofa burning Plaintiff's buttocks resulting is burns to her legs

and buttocks.

23.     All conditions prior to the filing of this action have been satisfied by the Plaintiff,

ALVIA JOHNSON.

<b><u>COUNT I – GENERAL NEGLIGENCE</u></b>

24.     The Plaintiff realleges, adopts, and incorporates by reference the allegations in

paragraphs one (1) through fifteen (23) as though alleged originally herein.

25.     Defendant, CELEBRITY, owed a "duty to exercise reasonable care for the safety

of its passengers" including the Plaintiff herein. *See, Hall* v. *Royal Caribbean Cruises, Ltd.,* 888

So.2d 654 (Fla. 3d DCA 2004), 2004 A.M.C. 1913; citing *Kermarec v. Compagnie Generate*

*Transatlantique,* 358 U.S. 625. (1959). That duty of care included, but is not limited to:

(a)     Serving the coffee in a carafe that is not exceedingly tall or top
        heavy and subject to easily tilting over, particularly upon the
        slightest movement of the ship.

(b)     Serving the coffee in a coffee carafe with a drip-free lid.

(c)     Measuring the temperature of the coffee being served to
        passengers, such as the Plaintiff, to ensure that the temperature
        does not exceed the industry standard.

(d)     Inspecting the coffee carafe to determine whether the coffee carafe
        and serving tray were reasonably safe and secure when placed on
        the small rectangular table.

(e)     Placing the room service tray at another readily available location

4

such as on the top of the stateroom dresser.

(f)     Placing the coffee carafe on the serving tray in a position that was not so close to the edge of the tray nor place the tray such that it hung over the side of the small rectangular table.

(g)     Setting the coffee carafe in a position that was not so close to the edge of the room service tray such that the carafe itself was unsafe and dangerous and such that it would not tip over onto the sofa discharging scalding hot coffee out of the carafe.

(h)     Warn Plaintiff that the coffee pot was not reasonably safe and secure.

(i)     Warn the Plaintiff that the sea state had increased during evening and carafe was susceptible to tilt over.

(j)     Properly train its employees and/or staff to safely serve and place coffee pots in a secure location within the cabin; and

(k)     Properly maintain coffee at an appropriate temperature, and not to allow the coffee to become so hot that it could scald passengers if it spilled on them.

26.     Defendant, CELEBRITY, breached its duty to exercise reasonable care owed to

Plaintiff, ALVIA JOHNSON, and was negligent as follows:

(a)     By serving the coffee in a carafe that was exceedingly tall and/or top heavy and subject to easily tilting over, particularly upon the slightest movement of the ship.

(b)     By failing to monitor or measure the temperature of the coffee being served to passengers, such as the Plaintiff, to ensure that the temperature does not exceed the industry standard.

(c)     By serving the coffee in a coffee carafe with a drip-free lid.

(d)     By failing to inspect the coffee carafe to ascertain whether the coffee carafe and serving tray were reasonably safe and securely placed on the small rectangular table.

(e)     By failing to determine that the coffee carafe was located so close to the edge of the room service tray such that the carafe was unsafe and dangerous such that it tipped over onto the sofa serve from and

5

securely retained coffee such that scalding hot coffee would not spill out of the coffee pot.

(f)    By failing to warn Plaintiff that the coffee pot was not reasonably safe and secure.

(g)    By failing to warn the Plaintiff that the sea state had increased during evening and carafe was susceptible to tilt over.

(h)    By failing to adequately train its employees and/or staff to safely serve and place coffee pots in a secure location within the cabin; and

(i)    By failing to properly maintain coffee at an appropriate temperature, and not to allow the coffee to become so hot that it could scald passengers if it spilled on them.

(j)    By failing to inspect its coffee carafe to ascertain whether the carafe was reasonably safe and securely placed on the table;

(k)    By failing to warn Plaintiff that the coffee carafe was not reasonably safe and secure;

(l)    By failing to properly train its employees and/or staff to safely serve and place coffee pots in a secure location within the cabin; and

(m)    By failing to properly maintain hot coffee at an appropriate temperature, and not to allow the coffee to become so hot that it could scald passengers if spilled on them.

(n)    Failure to develop a protocol concerning the use of tall coffee carafe during times of an increased sea state.

27.    CELEBRITY's conduct created a foreseeable zone of risk posing a general threat of harm to Plaintiff.

28.    CELEBRITY had actual notice of the dangerous condition given the precarious positioning of the coffee carafe and tray by the CELEBRITY room service personnel.

29.    The above acts and/or omissions caused and/or contributed to the Plaintiff being severely burned and injured because Plaintiff would not have been injured but for the above

6

delineated acts and/or omissions.

30. At all times material hereto, the conditions giving rise to Plaintiff's incident were created by the Defendant and not a transitory substance.

31. As a direct and proximate result of the negligence of Defendant, Plaintiff was injured about Plaintiff's body and extremities, suffered physical pain, mental anguish, significant and permanent scarring, loss of enjoyment of life, disability, disfigurement, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of Plaintiff's injuries, suffered physical handicap, lost wages and the Plaintiff's working ability has been impaired. The injuries are permanent or continuing in nature, and Plaintiff will suffer the losses and impairments in the future. In addition, the Plaintiff lost the benefit of Plaintiff's vacation, cruise, and transportation costs.

**WHEREFORE**, the Plaintiff demands judgment for all damages recoverable under the law against Defendant.

## COUNT II – NEGLIGENT FAILURE TO WARN

32. The Plaintiff realleges, adopts, and incorporates by reference the allegations in paragraphs one (1) through twenty-three (23) as though alleged originally herein.

33. At all times material hereto, it was the duty of Defendant to provide Plaintiff with reasonable care under the circumstances.

34. At all times material hereto, it was the duty of Defendant to warn passengers (like the Plaintiff) of dangers that were known, or reasonably should have been known, to Defendant in places where passengers (like the Plaintiff) are invited to or may reasonably be expected to be.

35. On or about the above date, Defendant and/or its agents, servants, and/or employees breached its duty to provide the Plaintiff with reasonable care under the

circumstances, through the following acts and/or omissions:

(a)     Failure to adequately warn the Plaintiff of the dangers posed by the scorching hot coffee carafe; and/or

(b)     Failure to warn the Plaintiff of the scorching and exceedingly hot temperature of the subject coffee; and/or

(c)     Failure to adequately warn the Plaintiff of the possibility that if the coffee carafe spilled, scorching and exceedingly hot coffee would burn the Plaintiff; and/or

(d)     Failure to promulgate and/or enforce adequate policies and procedures to ensure that passengers like the Plaintiff are warned of the dangers described herein.

(e)     Failure to warn the Plaintiff of the increased sea state that had developed during the early morning hours.

36.     The above acts and/or omissions caused and/or contributed to the Plaintiff being severely injured because Plaintiff would not have been injured had Defendant and/or its agents, servants and/or employees adequately warned and/or communicated the foregoing to the Plaintiff.

37.     As a direct and proximate result of the negligence of Defendant in failing to warn the Plaintiff, Plaintiff was injured about Plaintiff's body and extremities, suffered physical pain, significant and permanent scarring, mental anguish, loss of enjoyment of life, disability, disfigurement, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of Plaintiff's injuries, suffered physical handicap, lost wages and the Plaintiff's working ability has been impaired. The injuries are permanent or continuing in nature, and Plaintiff will suffer the losses and impairments in the future. In addition, the Plaintiff lost the benefit of Plaintiff's vacation, cruise, and transportation costs.

**WHEREFORE**, the Plaintiff demands judgment for all damages recoverable under the law against Defendant.

## COUNT III – VICARIOUS LIABILITY

38.     The Plaintiff realleges, adopts, and incorporates by reference the allegations in paragraphs one (1) through twenty-three (23) as though alleged originally herein.

39.     Defendant, CELEBRITY, is vicariously liable for the acts of the crewmember who delivered the room service tray to Plaintiff's stateroom and placed a scorching hot coffee carafe at the edge of the serving tray and overhanging the edge of the table in front of the sofa where Plaintiff was sitting and who failed to properly secure the coffee carafe such that it would not spill excessively, scorching hot coffee on Plaintiff.

40.     Defendant, CELEBRITY, owed a duty to exercise reasonable care under the circumstances for the safety of its passengers.

41.     Defendant is responsible for the conduct of the crewmember that placed the scorching hot coffee pot too close to the edge of the table in front of the sofa where Plaintiff was sitting, as herein described.

42.     The crewmember is an agent of the Defendant, CELEBRITY, for the following reasons:

a.     All crewmembers delivering room service on the *Celebrity Equinox* were the employees of Defendant, or were CELEBRITY agents, apparent agents, and/or servants.

b.     All crewmembers were subject to the right of control by Defendant.

c.     All crewmembers were acting within the scope of their employment or agency.

d.     Defendant, CELEBRITY, acknowledged that the crewmembers and officers would act on Defendant's behalf, and they accepted the undertaking.

e.     The negligent crewmember was wearing his CELEBRITY uniform

9

when the incident occurred.

43.     As a direct and proximate result of the negligence of Defendant, Plaintiff was injured about Plaintiff's body and extremities, suffered physical pain, mental anguish, significant and permanent scarring, loss of enjoyment of life, disability, disfigurement, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of Plaintiff's injuries, suffered physical handicap, lost wages and the Plaintiff's working ability has been impaired. The injuries are permanent or continuing in nature, and Plaintiff will suffer the losses and impairments in the future. In addition, the Plaintiff lost the benefit of Plaintiff's vacation, cruise, and transportation costs.

**WHEREFORE**, the Plaintiff demands judgment for all damages recoverable under the law against Defendant.

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury of all issues so triable.

Dated this 2nd day of June 2023.

Respectfully submitted,

ROBERT L. GARDANA, P.A.
Attorneys for Plaintiff
12350 SW 132 Court, #204
Miami, Florida 33186
PH: 305-358-0000
FAX: 305-358-1680
E-Mail: robert@gardanalaw.com
          staff@gardanlaw.com

By:  *Robert L. Gardana_*
Robert L. Gardana, Esq.
Florida Bar No. 279668